UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KOLO, LLC,

               Plaintiff,

   -against-

KATE'S PAPERIE, LTD.,

               Defendant.

---

07 CIV. 10653

**JUDGE: McMAHON**

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S
## PARTIAL MOTION TO DISMISS

Frank J. Ciano, Esq. (FJC – 4981)
Robert Varga, Esq. (RV – 0636)
GOLDBERG SEGALLA LLP
**ATTORNEYS FOR PLAINTIFF**
**KOLO, LLC**
170 Hamilton Avenue, Suite 203
White Plains, New York 10601
Tel: (914) 798-5410
Fax: (914) 798-5401
fciano@goldbergsegalla.com
rvarga@goldbergsegalla.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

MOTION TO DISMISS STANDARD ................................................................. 2

ARGUMENT ......................................................................................................... 3

    I.      THE ACQUISITION LOI IS A TYPE II BINDING PRELIMINARY
           COMMITMENT THAT IS BINDING ON DEFENDANT ................... 3

            1. The Language of the Acquisition LOI ...................................... 5

            2. The Context of the Negotiations .................................................. 9

            3. The Existence of Open Terms ..................................................... 10

            4. Partial Performance .................................................................... 11

            5. Type of Contract ........................................................................ 12

    II.     THE FACTS SUPPORT A CLAIM FOR BREACH OF IMPLIED
           CONTRACT ......................................................................................... 13

    III.    DEFENDANT FAILED TO ESTABLISH THAT COUNT IX,
           UNJUST ENRICHMENT, MUST BE DISMISSED AS A MATTER
           OF LAW .............. ............................................................................... 16

CONCLUSION ...................................................................................................... 19

## TABLE OF AUTHORITIES

*Cases*                                                                                                   **Page**

*Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*

    45 F.3d 543 (2d Cir.1998)................................................................3, 4

*Arcadian Phosphates Inc. v. Arcadian Corp.*

    884 F.2d 69 (2d Cir.1989)...................................................................3

*Beekman Investment Partners, L.P. v. Alene Candles, Inc.,*

    2006 WL 330323 (S.D.N.Y. 2006).................................................16, 17

*Bradkin v. Leverton*

    26 N.Y.2d 192, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970)..................15

*Conley v. Gibson*

    355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).......................................2

*Ellis v. Provident Life & Accident Ins. Co.,*

    3 F.Supp.2d 399 (S.D.N.Y. 1998) .................................................13, 14

*Friedl v. City of New York*

    210 F.3d 79 (2d Cir. 2000)...................................................................2

*Gruen Industries, Inc. v. Biller*

    608 F.2d 274 (7th Cir. 1979) ..............................................................17

*In Re Boice*

    226 A.D.2d 908, 640 N.Y.S.2d 681 (3d Dept. 1996) ............................13

*Jemzura v. Jemzura*

    36 N.Y.2d 496, 369 N.Y.S.2d 400, 330 N.E.2d 414 (1975)..................13

*Joseph Martin Jr. Delicatessen v. Schumacher*

    52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981).....................................3

*Maas v. Cornell Univ.*

    94 N.Y.2d 87, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999)...................................13

*Miller v. Schloss*

    218 N.Y. 400, 113 N.E. 337 (1916)........................................................... 13-14, 15

*Missigman v. USI Northeast, Inc.,*

    131 F.Supp.2d 495 (S.D.N.Y. 2001)........................................................................14

*Murray v. Miner*

    74 F.3d 402 (2d Cir. 1996)......................................................................................2

*Parsa v. New York*

    64 N.Y.2d 143, 485 N.Y.S.2d 27, 474 N.E.2d 235 (1984)...................................13

*Precision Testing Laboratories, Ltd. v. Kenyon Corp. of America*

    644 F.Supp. 1327 (S.D.N.Y. 1986) .......................................................................18

*Rule v. Brine*

    85 F.3d 1002 (2d Cir. 1996).................................................................................15

*Songbird Jet Ltd., Inc. v. Amax Inc.*

    581 F.Supp. 912 (S.D.N.Y. 1984) .......................................................................18

*Teachers Ins. & Annuity Ass'n v. Tribune Co.*

    670 F.Supp. 491 (S.D.N.Y.1987) ..........................................................3, 4, 5, 9, 10

**Statutes/Rules**

Fed.R.Civ.P. 12(b)(6)............................................................................................2

## PRELIMINARY STATEMENT

Plaintiff, KOLO, LLC ("Kolo") submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Counts I, II, III, IV, and IX of the Complaint. Defendant seeks to dismiss these claims on the grounds that nothing in the language contained in an acquisition letter of intent the parties executed on August 2, 2007 (hereinafter the "Acquisition LOI")(attached to Defendant's Motion as Ex. "A") was binding on Defendant and, as such, those claims fail as a matter of law.

As demonstrated herein, Plaintiff's Complaint states viable claims against Defendant based on the Acquisition LOI and, therefore, Defendant's Partial Motion to Dismiss should be denied accordingly.

Furthermore, though Defendant makes sporadic reference to a "Shop-in-Shop LOI" in the motion papers, the instant motion is limited in scope to the Acquisition LOI. To the extent Defendant seeks to dismiss Count IX as it pertains to the Shop-in-Shop LOI, that part of the motion should be denied because Defendant failed to demonstrate how that cause of action for unjust enrichment fails as a matter of law.

## STATEMENT OF FACTS

The relevant facts are set forth in the affidavit of Mr. Keith Werner, sworn to on January 22, 2008 ("Werner Aff."), and with the exhibits attached thereto are incorporated as if fully set forth herein.

## MOTION TO DISMISS STANDARD

When faced with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the Court must construe the complaint in the light most favorable to the plaintiff (*Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)) and accept the allegations of the complaint as true. *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Dismissal of the complaint is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## ARGUMENT

I.    **THE ACQUISITION LOI IS A TYPE II BINDING PRELIMINARY COMMITMENT THAT IS BINDING ON DEFENDANT**

The question presented herein is whether the Acquisition LOI is a binding preliminary agreement or a wholly unenforceable agreement. Defendant claims that the Acquisition LOI has no binding effect whatsoever. Kolo respectfully disagrees and demonstrates herein that the Acquisition LOI imposed upon the Defendant (a) the duty to act in good faith to conclude negotiations, (b) to refrain from soliciting offers from others, and (c) to keep the terms of the Acquisition LOI confidential.

As a general rule, an enforceable contract requires a meeting of the minds and a mere "agreement to agree" is not binding. *See Joseph Martin Jr. Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247 (1981). Nevertheless, New York courts recognize that "preliminary agreements" may be conclusive and binding on parties even though they do not comprise a complete, final agreement. *Arcadian Phosphates Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (*citing Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F.Supp. 491 (S.D.N.Y.1987)).

Generally, when the parties contemplate further negotiations and the execution of a more formal document, a preliminary agreement does not create a binding contract. *See Adjustrite Systems, Inc. v. GAB Business Services, Inc.,* 145 F.3d 543, 548 (2d Cir. 1998)(*internal citations omitted*).

However, in certain situations, a preliminary agreement can become binding upon the parties. One such instance is the so-called Type I agreement as articulated by Judge Leval in *Teachers Ins. & Annuity Ass'n v. Tribune Co.,* 670 F.Supp. 491

(S.D.N.Y. 1987). Under a Type I agreement, the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document later. *See Adjustrite Systems,* 145 F.3d at 548. The Type I agreement is a fully binding preliminary agreement.

The Type II agreement, called "binding preliminary commitment" by Judge Leval, is binding only to a certain degree. *Id.* This type of agreement is created when the parties agree on certain major terms, but leave other terms open for further negotiations. *See id.* In this type of agreement, the parties "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement." *Tribune,* 670 F.Supp. at 498. If the preliminary agreement is of the Type II, then "the parties are bound only to make a good faith effort to negotiate and agree upon the open terms and a final agreement; if they fail to reach such a final agreement after making a good faith effort to do so, there is no further obligation." *Adjustrite Systems,* 145 F.3d at 548.

The instant matter involves a Type II preliminary commitment to act in good faith to negotiate further, but it also includes other terms that are binding on Defendant.

The Acquisition LOI has two major parts. The first part includes terms that the parties fully agreed upon, which is binding on them. Specifically, as evident from the Acquisition LOI, it is clear that the parties agreed to keep the information confidential, that Defendant would refrain from soliciting offers from others, and an obligation by the parties to act in good faith to continue negotiating the open terms. The second part includes the proposed terms of the final formal instrument to be executed by the parties.

These terms include the reorganization plan, financing, compensation, and the operating agreement.

The Second Circuit identified five factors to be considered in determining whether a Type II preliminary commitment is created:

(1)     the language of the agreement;

(2)     the context of the negotiations;

(3)     the existence of open terms;

(4)     partial performance; and

(5)     the necessity of putting the agreement in final form, as indicated by the customary form of such transactions.  *Id.* at 549, FN6 (*citing Tribune*, 670 F.Supp. at 499-503).

### 1.    The Language of the Acquisition LOI

Defendant relies heavily on the language found in the first paragraph of the Acquisition LOI and argues that this LOI has no binding effect at all.  Specifically, the Acquisition LOI states as follows:

> The following confirms the understanding, but is not a binding agreement or contract, for which the parties have agreed to in principal to enter into a contract hereinafter called ("Agreement") for Kolo to acquire an equity interest in Kate's, to design and conduct a reorganization plan, and to provide additional capital financing for the long-term growth of Kate's.  It is intended that the parties will enter into a formal binding agreement on the following terms of the contract within a reasonable time period.

However, defendant fails to mention the closing paragraph of the Acquisition LOI which provides as follows:

> By signing below each party agrees and consents [sic] to the above mention terms and agrees to act in good faith to complete the negotiations for additional terms which will be set forth in the Agreement.

As evident from the above language, the signature of the parties represents their agreement and consent to the major terms that will be included in a more formal agreement. As such, the parties agreed in principal to such items as the reorganization plan, financing, compensation, and operating agreement.

But they also agreed to certain terms that require no further negotiations, which include the obligation to keep the information confidential, that Defendant agreed to refrain from soliciting offers from others before September 30, 2007, and they agreed to act in good faith to conclude negotiations and finalize a formal instrument as to the terms agreed to in principal.

In light of the above, this case resembles the Type II agreement in that the parties agreed in principal on all the major terms of the acquisition and agreed to formalize those in a more detailed agreement at a later date. Also, this case resembles a Type I agreement too in that the parties fully concluded negotiations as to confidentiality, Defendant's obligation to refrain from soliciting offers from others and act in good faith.

For instance, the last paragraph of the Acquisition LOI clearly indicates that the parties are obligated to act in good faith to negotiate for additional terms to be included in the formal instrument. Thus, there is a definite Type II agreement in place created by this language.

Further, Paragraph 5 "Confidentiality" states that both parties "agree to keep all information" confidential and that they acknowledge that they have signed a "Mutual Confidentiality Agreement." See Defendant's Ex. "A" at p. 2.

Also, Paragraph 6 states that "Kate's will not, directly or indirectly . . . (i) solicit . . . inquiries, proposals, or offers from any potential counterparty to a transaction . . . relating to the disposition of the assets or securities of Kate's . . . or (ii) participate in any discussions or negotiations regarding . . . the disposition of the assets or any securities of Kate's . . . prior to September 30, 2007." See Defendant's Ex. "A" at p. 2.

According to Defendant, none of these paragraphs have any binding effect whatsoever. However, the question arises why did the parties include specific language about confidentiality and certain restrictions as to Kate's (see Paragraph 6) if they had no binding effect whatsoever? Moreover, Paragraph 6 contains the specific date of September 30, 2007, which is an indication of the parties' intent that the restrictions be in effect from the date of signing on August 2, 2007 through September 30, 2007.

If the Acquisition LOI was a "mere agreement to agree," then there was no need to include Paragraph 5, a specific date in Paragraph 6, and the last paragraph that imposed upon the parties the obligation to act in good faith to complete negotiations as to Paragraphs 1 through 4.

As the Court will note, the language "but is not a binding agreement or contract" stands in sharp contrast with the closing paragraph and Paragraphs 5 and 6, which impose clear and unambiguous obligations upon the parties.

A reasonable interpretation of the Acquisition LOI indicates that the parties intended the major terms in Paragraphs 1 through 4 not to be binding but that the

obligations set forth in Paragraphs 5, 6 and last paragraph were intended to be binding on them.

As the Court will note, Paragraphs 5, 6 and the last paragraph are different in tone and language. Certainly, these binding paragraphs are significantly different from the non-binding Paragraphs 1 – 4. Whereas the non-binding paragraphs contain such future tense phrases as "will provide", "will also agree", "will arrange", "will be negotiated", "will acquire", "will be established", and "will be granted," the binding paragraphs contain phrases written in the present tense, such as "[b]oth parties agree to keep all information . . . confidential" and "each party agrees and conscents [sic] to the above mention terms and agrees to act in good faith." See Defendant's Ex. "A" at p. 2, 3.

Also, Paragraph 6 imposes restrictive language such as "Kate's will not . . . solicit . . . offers" from others or "participate in any discussions or negotiations regarding, or furnish to any person any information . . . prior to September 30, 2007." See Defendant's Ex. "A" at p. 2. This language makes it clear that Defendant had an affirmative obligation to refrain from negotiating with others concerning the subject matter of the Acquisition LOI.

The Acquisition LOI called for the resolution of the Operating Agreement, which Kolo submitted to Defendant in draft form, but Defendant never executed same, even though Mr. Flax indicated in his voicemail to Mr. Werner that it would be a "no brainer, I'm just doing it, I don't give a [expletive]." See Werner Aff. at ¶9.

Accordingly, even though the Operating Agreement was never executed, that does not mean that Defendant had no obligation to negotiate in good faith before

breaking off negotiations, refrain from negotiating with others, and keep information confidential as agreed upon by the parties.

Defendant failed to explain why these obligations as outlined herein were not binding on them.

Further, enforcing the terms of Paragraphs 5, 6, and the last paragraph does not have the effect of trapping parties in "surprise contractual obligations that they never intended." *Tribune*, 670 F.Supp. at 497. This is clearly not the case here.


2.    **The Context of the Negotiations**

As evident from the Affidavit of Mr. Werner, Kate's Paperie was experiencing financial difficulties and was anxious to receive help in the form of financial and operational business restructuring.

Further, the parties previously entered into a Shop-in-Shop LOI, pursuant to which Defendant arranged for and provided Kolo space at the Spring Street store and accepted rent payment from Kolo for said location. See Werner Aff. at ¶6. Thus, the Shop-in-Shop arrangement was only a part of the solution.

As evident from the Affidavit of Mr. Werner, Kate's Paperie was ready to move forward with the execution of the Acquisition LOI so that Kolo could perform under its terms, including the much needed financing to be provided to Defendant.

Mr. Flax's voicemail to Mr. Werner confirms that Kate's Paperie was "completely on board", "ready to start working" and that "all chips are in and river card on the table." Mr. Flax's attitude and language belies Defendant's position and supports

the conclusion that, at a minimum, that Paragraphs 5, 6 and the last paragraph of the Acquisition LOI were binding on Defendant.

Accordingly, this factor supports Plaintiff's position that the aforementioned paragraphs were binding on Defendant.


### 3.    The Existence of Open Terms

The Acquisition LOI states that the parties agreed upon the "major terms" of the Operating Agreement for the partnership to be formed by the two companies and that by signing the Acquisition LOI the parties agree and consent to "act in good faith to complete negotiations for additional terms which will be set forth in the Agreement." See Defendant's Ex. "A" at p. 3.

As evident from the above language, the parties specifically mentioned that they have a good faith obligation to continue negotiating all the outstanding terms to reach the final "Agreement."

As Judge Leval stated in *Tribune, supra*, the "open terms obviously have a somewhat different significance [in a Type II preliminary commitment] where . . . the nature of the contract alleged is that it commits the parties in good faith to negotiate the open terms." *Tribune*, 670 F.Supp. at 499.   Judge Leval noted that "[t]o consider the existence of open terms as fatal would be to rule, in effect, that preliminary biding commitments cannot be enforced.   That is not the law." *Id.*

The Acquisition LOI states that there are open items to be resolved, which the parties have to negotiate in good faith to reach a final agreement.

Therefore, this factor clearly favors Kolo in establishing that the parties entered into a Type II binding commitment.

### 4.    Partial Performance

Kolo partially performed under the Acquisition LOI. In compliance with the terms of the Acquisition LOI, Kolo provided significant consulting services to improve the financial and operational aspect of Defendant's business in exchange for the acquisition of the 20% equity. See Werner Aff. at ¶12.

Moreover, as evident from the enclosed Affidavit of Mr. Werner, Kolo provided numerous financial and operation related services again in furtherance of the terms of the Acquisition LOI. Essentially, Mr. Werner became the acting Chief Financial Officer and Ms. Kim Hassler became the acting Comptroller of Kate's Paperie and made day-to-day decisions concerning Kate's Paperies' business. See Werner Aff. at ¶21-31.

As Mr. Werner states, "Kate's Paperie actively encouraged and engaged in assisting Kolo to actively manage Kate's Paperie's operational and financial status in order to enable Kolo to make day-to-day decisions concerning same." See Werner Aff. at ¶18.

The words and actions of Kate's Paperie clearly support its consent and acceptance of Kolo's performance in furtherance of the terms of the Acquisition LOI, so that once the parties executed the Operating Agreement, which was a "no brainer," and performed as outlined in Paragraphs 1 through 4, the 20% equity would vest in Kolo. See Werner Aff. at ¶32.

Clearly, these efforts on the part of Kolo were performed in furtherance of the specific terms of the Acquisition LOI and this factor favors Kolo.

### 5.    Type of Contract

The terms of the acquisition captured in Paragraphs 1 through 4 were to be finalized by the Operating Agreement, which did not occur in this case. However, the same cannot be said about Paragraphs 5, 6 and the last paragraph of the Acquisition LOI, which imposed obligations upon the parties, and which were suitable to be included in a letter of intent such as the one at issue herein. The terms set forth in Paragraphs 5,6 and the last paragraph are reasonably simple terms that were final and needed no further negotiations or inclusion in a formal instrument.

Accordingly, the aforementioned terms were suitable to be set forth in the Acquisition LOI.

Count I of the Complaint specifically alleges that Defendant breached its obligation to refrain from soliciting offers and/or negotiating with others prior to September 30, 2007, as set forth in Paragraph 6 of the Acquisition LOI. See Defendant's Ex. "C" at ¶14.

Count II alleges that Defendant breached its duty to negotiate in good faith toward the final operating agreement that was to be executed by the parties.

Thus, as demonstrated herein, Plaintiff stated viable causes of action in Counts I and II and, accepting the allegations of the Complaint as true, Defendant failed to establish why dismissal is warranted in this case.

## II.  THE FACTS SUPPORT A CLAIM FOR BREACH OF IMPLIED CONTRACT

It is well settled New York law that, even if there is no written contract between two parties, "a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct." *Ellis v. Provident Life & Accident Ins. Co.*, 3 F.Supp.2d 399 (S.D.N.Y. 1998) (*quoting In Re Boice*, 226 A.D.2d 908, 910, 640 N.Y.S.2d 681 (3d Dept. 1996)).

"A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words ... and is derived from the presumed intention of the parties as indicated by their conduct." *Jemzura v. Jemzura,* 369 N.Y.S.2d 400 (1975) (internal quotations and citations omitted). While an implied in fact contract is equally binding as an expressed contract, and, like an express contract, requires mutual assent evincing the intention of the parties to be bound by specific contractual terms, *see Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93-94, 699 N.Y.S.2d 716 (1999) (*citations omitted*), it "rests upon the conduct of the parties and not their verbal or written words." *Parsa v. New York*, 64 N.Y.2d 143, 148, 485 N.Y.S.2d 27 (1984).

An implied-in-fact contract is "just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct." *Ellis*, 3 F.Supp.2d at 399. A contract cannot be implied where the facts "are inconsistent with its existence, or where there is an express contract covering the subject-matter involved, or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary, and, unless he has conducted himself in such a manner

that his assent may fairly be inferred, he has not contracted." *Id.* (*quoting Miller v. Schloss*, 218 N.Y. 400, 406, 113 N.E. 337 (1916)).

Defendant argues that since an "express contract" i.e., the Acquisition LOI, was entered into by the parties, a claim for breach of implied contract cannot be maintained. On one hand Defendant is arguing that the Acquisition LOI is not a contract and not binding on the parties, and on the other hand it seeks refuge in the existence of the Acquisition LOI and equates it to an express binding contract.

Defendant's reliance on *Missigman v. USI Northeast, Inc.,* 131 F.Supp.2d 495 (S.D.N.Y. 2001) to support this premise is misplaced. In *Missigman*, the Court found that there was no enforceable express written contract pertaining to the subject of plaintiff's continued employment with the defendant. As such, the Court explained that the relevant inquiry within the context of a claim for breach of implied contract is whether defendant "conducted itself in such a manner that its assent may fairly be inferred." *Id.* at 513 (*citing Ellis*, 3 F.Supp.2d at 409).

In this case, Defendant does not address this relevant inquiry. The Complaint alleges that Defendant "expressed its assent to the terms and conditions of the Agreement by allowing certain pre-closing activities to occur." See Defendant's Motion, Ex. "C" at ¶36. Additionally, the allegations in the Complaint and the facts set forth in the Werner Affidavit pertains to Defendant's conduct, which makes it clear that Defendant assented to the terms set forth in the Acquisition LOI, orally indicated that it agreed to those terms and actively encouraged Plaintiff to perform said terms.

Therefore, even though the Acquisition LOI states that the terms are non-binding until a final agreement is reached, Defendant's actions stand in stark contrast to such non-

binding language. For instance, if the terms of the Acquisition LOI were non-binding, then instead of performing in furtherance of the terms, the parties should have continued negotiating until everything was formalized in a formal instrument. However, since Defendant was experiencing financial difficulties, it actively sought the help and involvement of Plaintiff in its business operations, effectively signaling its agreement to those terms.

As is evident from the Werner Affidavit, the words and actions of Kate's Paperie went far beyond the non-binding language set forth in the Acquisition LOI. To the extent Defendant's conduct is sufficient to support an implied contract, Plaintiff should be allowed to plead and continue with this claim in the alternative.

Alternatively, if a plaintiff fails to prove a valid contract, the court may nonetheless allow recovery in *quantum meruit* to assure a just and equitable result where the defendant "received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them." *Rule v. Brine,* 85 F.3d 1002 (2d Cir. 1996) (*quoting Bradkin v. Leverton,* 26 N.Y.2d 192, 196, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970)). Such a recovery for unjust enrichment is permissible "when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another." *Id.* (*quoting Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916)).

If the Court finds that the facts and circumstances set forth in the Complaint state a viable claim for *quantum meruit*, Plaintiff will amend the Complaint accordingly.

### III. DEFENDANT FAILED TO ESTABLISH THAT COUNT IX, UNJUST ENRICHMENT, MUST BE DISMISSED AS A MATTER OF LAW

Count IX pertains to both the Acquisition LOI and peripherally to the Shop-in-Shop LOI. However, Defendant failed to explain in what manner Count IX should be dismissed as it pertains to the Shop-in-Shop LOI. As such, that part of Defendant's motion must be denied.

As to the remaining portion of Count IX, Plaintiff stated a valid claim for unjust enrichment pertaining to the Acquisition LOI.

To establish unjust enrichment, we must establish that (1) the defendant benefited, (2) at Kolo's expense, and (3) that equity and good conscience require restitution. *Beekman Investment Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323 (S.D.N.Y. 2006).

Defendant claims that Plaintiff is seeking to recover its transactional costs associated with failed negotiations and cites *Beekman Investment Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323 (S.D.N.Y. 2006) to support this premise.

The flaw in Defendant's reasoning is the assumption that the workout, management and other services provided by Plaintiff were the type challenged in *Beekman*, i.e., transactional costs, which were not allowed.

However, Plaintiff is not seeking to recover the expenses of a failed negotiation but the cost of direct benefits provided to Defendant pursuant to the terms set forth in the Acquisition LOI. *See* Werner Aff. at ¶35.

As such, the benefits provided to Defendant, which included making day-to-day business decisions, were directly improving its financial and business operations so that it could avoid potential bankruptcy.

The essence of the Acquisition LOI was to restore Kate's Paperie's financial status in exchange for Kolo acquiring 20% equity in the company. As set forth in the Werner Affidavit, Kolo performed and provided substantial consulting and workout assistance to Kate's Paperie in compliance with the terms of the Acquisition LOI. See Werner Aff. at ¶10.

For instance, the multiple financial records provided by Kate's Paperie to Kolo were not provided to enable Kolo to assess the Defendant's worth to further prepare for the acquisition transaction but to effectively take over the management of the Defendant's financials and operations so that decisions can be make in a way to enable Defendant to emerge from its financial difficulties. The activities and services provided by Kolo were designed to directly benefit Defendant.

As such, this case is different from *Beekman, supra*, in which the plaintiff sought to recover the expenses incurred in connection with the "legal and financial analysis that Beekman performed in preparation for the execution of a purchase agreement." *Id.* at *8.

This case is also different from *Gruen Industries, Inc. v. Biller*, 608 F.2d 274, 282 (7th Cir. 1979), in which the plaintiff, would-be buyers, incurred preparation expenses, including attorneys' fees, which was held not to be recoverable as a result of failed negotiations. Thus, *Beekman* and *Gruen* are readily distinguishable from the case *sub judice* because there is a fundamental difference between transactional costs or preparation expenses incurred by a party and acts performed in furtherance of terms set forth in the signed Acquisition LOI.

Certainly, the services provided by Kolo were not preparatory in nature as in *Gruen, supra*.

A relevant case not cited by Defendant is *Precision Testing Laboratories, Ltd. v. Kenyon Corp. of America*, 644 F.Supp. 1327 (S.D.N.Y. 1986) in which the District Court distinguished *Songbird Jet Ltd., Inc. v. Amax Inc.*, 581 F.Supp. 912 (S.D.N.Y. 1984) on the ground that Songbird's services were designed to promote its own interests whereas the plaintiff's services in Precision were designed to benefit defendant. Since plaintiff facilitated the issuance of a certificate of conformity to defendant, the court found that defendant was unjustly enriched because the certificate would not have been obtained without the efforts expended by the plaintiff.

This case is similar to *Precision, supra*, in that Plaintiff's services were specifically designed to benefit Defendant by improving its financial and operational condition. Accordingly, Defendant's reliance on *Songbird Jet Ltd., Inc. v. Amax Inc.*, 581 F.Supp. 912 (S.D.N.Y. 1984) is misplaced.

Therefore, Defendant failed to carry its burden to establish that Plaintiff's Count IX -- Unjust Enrichment claim fails as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Defendant's Partial Motion to Dismiss should

be denied.

Dated:  White Plains, New York
       January 22, 2008


By:_____
     Frank J. Ciano, Esq. (FJC – 4981)
     Robert Varga, Esq. (RV – 0636)
     GOLDBERG SEGALLA LLP
     **ATTORNEYS FOR PLAINTIFF**
     **KOLO, LLC**
     170 Hamilton Avenue, Suite 203
     White Plains, New York 10601
     Tel: (914) 798-5410
     Fax: (914) 798-5401
     fciano@goldbergsegalla.com
     rvarga@goldbergsegalla.com

96860.1