David S. Versfelt (DV 8935)
Elizabeth M. Harris (EH 4368)
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212.536.3900
Facsimile: 212.536.3901

Attorneys for Defendant Kate's Paperie, Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                            :
KOLO, LLC,                                                  :
                                                            :
                            Plaintiff,                      :
                                                            :   No.: 07-Civ.-10653 (CM)
              v.                                            :
                                                            :
                                                            :
                                                            :
KATE'S PAPERIE, LTD.,                                       :
                                                            :
                            Defendant.                      :
                                                            :
-----------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION
BY DEFENDANT KATE'S PAPERIE, LTD. TO DISMISS COUNTS
<u>ONE THROUGH FOUR AND NINE OF THE COMPLAINT</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. KOLO RELIES UPON AN OUTDATED LEGAL STANDARD ................................... 2

II. THE ACQUISITION LOI IS BY ITS EXPRESS TERMS A NON-BINDING PRELIMNARY AGREEMENT. ......................................................................... 3

    A. The Express Terms of The Document's First Sentence Are Controlling. ................................................................................................................ 3

    B. The Remaining Tribune Factors, While Not Relevant, Nevertheless Defeat Kolo's Claims. ......................................................................... 6

III. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM NECESSARILY FAILS. .................................................................................................. 9

IV. KOLO'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW. ............................................................................................................ 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adjustrite System, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543 (2d Cir. 1998) .............. 2, 3, 5

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989) .......................... 1, 2, 3, 4

*Beekman Inv. Partners LP v. Alene Candles, Inc.*, 2006 WL 330323 (S.D.N.Y. Feb.16, 2006) ............................................................................................................................. 3, 5

*Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005) ............................................................................. 5

*Cohen v. Lehman Bros. Bank*, 273 F. Supp. 2d 524 (S.D.N.Y. 2003) ............................... 1, 3, 5

*Cohen v. Singer*, 4 Fed. Appx. 38 (2d Cir. 2001) ................................................................. 4, 5

*Conley v. Gibson*, 355 U.S. 41 (1955) ....................................................................................... 2

*Ellis v. Provident Life & Accident Insurance Co.*, 3 F. Supp. 2d 399 (S.D.N.Y. 1998) .......... 4

*Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495 (S.D.N.Y. 2001) ...................... 2, 3, 4, 5

*Precision Testing Lab., Ltd. v. Kenyon Corp. of Am.*, 644 F. Supp. 1327 (S.D.N.Y. 1986) ................................................................................................................ 10

*Russo v. Banc of America Sec., LLC*, 2007 WL 1946541 (S.D.N.Y. 200) ................................ 4

*Teachers Ins. and Annuity Ass'n of America v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y.1987) ................................................................................................... 1, 2, 3, 4, 5

*In re Xethanol Corp. Securities Litigation*, No. 06 Civ. 10234, 2007 U.S. Dist. LEXIS 65935 (Baer, J.) ..................................................................................................... 2

Defendant Kate's Paperie, Ltd. ("Kate's") respectfully submits this reply memorandum of law in further support of its Motion to Dismiss Counts I, II, III, IV and IX of the Complaint filed by Kolo, LLC ("Kolo" or "Plaintiff").

## PRELIMINARY STATEMENT

In its opening papers, Kate's demonstrated that Kolo seeks to enforce terms contained in a two-page document (the "Acquisition LOI") that explicitly sets forth the parties' intent not to be bound by providing that the LOI "is not a binding agreement or contract." (A copy of the Acquisition LOI is attached as Exhibit A to the Affirmation of David Versfelt (hereinafter, "Versfelt Affirmation") dated December 28, 2007, accompanying Kate's opening papers.). In response, Kolo attempts to salvage its claims by urging the Court to apply the *Tribune* test to render the Acquisition LOI a "Type II" binding preliminary commitment. *See Teachers Ins. and Annuity Ass'n of America v. Tribune Co.*, 670 F. Supp. 491, 499-503 (S.D.N.Y. 1987) (hereinafter, "*Tribune*"). But under *Tribune* and other precedents dismissal is mandated here, for Kolo's claims cannot pass muster under the well-established principal that parties may be bound only when they agree to be bound.

*Tribune* and other cases of this Court and the Second Circuit make clear that there is no need to look beyond the first *Tribune* factor – the express language of the agreement – when an LOI contains an explicit statement of intent not to be bound absent execution of a more formal document. Here, the words of the Acquisition LOI itself state that it "is not a binding agreement or contract," making Kolo's arguments unavailing. (Versfelt Aff. Ex. A at 1). But even if other *Tribune* factors are considered, the allegations of the Complaint are unavailing, for it is simply not possible to support contract claims in the absence of a binding agreement.

1

Apparently conceding its failure to state a viable cause of action, Kolo appears to suggest that it be permitted to amend the Complaint so as to add additional claims. (Pl.'s Mem. at 15). But no amount of repleading could be sufficient to overcome the clear words of the Acquisition LOI, so Kolo should not be permitted an opportunity to replead.

Any doubt that Kolo seeks to consummate through litigation the contingent transaction contemplated by the Acquisition LOI is resolved by referring to the Complaint. In seven of the Complaint's ten claims Kolo demands contract damages or specific performance of some sort. Had Kolo desired to bind the parties to the ultimate transaction, it should not have signed an agreement containing an express reservation of rights not to be bound.

For these reasons, as well as those set forth in Kate's opening brief, the Court should dismiss Counts I through IV and IX of the Complaint.

## ARGUMENT

### I. KOLO RELIES UPON AN OUTDATED LEGAL STANDARD.

As an initial matter, Kolo relies upon the wrong legal standard for weighing this motion to dismiss. Kolo urges the Court to follow the *Conley* standard. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1955). However, in *Bell Atlantic v. Twombly*, the United States Supreme Court specifically disavowed the *Conley* standard and directed that *Conley* should be "forgotten." 127 S. Ct. 1955, 1968, 1969 (2007).

Under the Supreme Court's new, more stringent standard, Kolo is required to provide "plausible grounds" for its allegations with "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support them. *Id.* at 1965; *see In re Xethanol Corp. Secs. Litig.*, No. 06 Civ. 10234, 2007 U.S. Dist. LEXIS 65935, at *5 (Baer, J.). As demonstrated below and in Kates' opening papers, Plaintiff simply cannot meet this standard of law.

II. **THE ACQUISITION LOI IS BY ITS EXPRESS TERMS A NON-BINDING PRELIMNARY AGREEMENT.**

A. **The Express Terms of The Document's First Sentence Are Controlling.**

The Acquisition LOI in its very first sentence confirms the parties' "understanding" in principal to "enter into a [subsequent] contract," and in that very first sentence explicitly states that the LOI itself "is not a binding agreement or contract." (Versfelt Aff. Ex. A). There is no ambiguity or vagueness about that expression of the non-binding nature of the document. Under well-established precedents of this Court and the Second Circuit, that express statement of the parties' intention not to be bound by the terms of the LOI is sufficient, by itself, to require dismissal of Kolo's claims for damages or specific performance of the LOI.

Kolo's responsive papers attempt to obfuscate the law by suggesting that this Court should ignore the explicit statement of the parties' intent not to be bound. But such a path would contravene established precedent in which this Court, as well as the Second Circuit, has considered the language of an LOI to be a conclusive factor in evaluating such a document. *See Arcadian Phosphates Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (court does not "look [any] further" than the language of the memorandum); *Beekman Inv. Partners LP v. Alene Candles, Inc.*, 2006 WL 330323, *7 (S.D.N.Y. Feb.16, 2006) (the terms of the LOI "do not constitute a definitive . . . contract or agreement"); *Cohen v. Lehman Bros. Bank*, 273 F. Supp. 2d 524, 527 (S.D.N.Y. 2003) (hereinafter, "*Cohen*") ("application is not a commitment . . . and does not impose any obligations"); *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 506 (S.D.N.Y. 2001) ("when the parties have clearly expressed an intention not to be bound until their preliminary negotiations have culminated in the execution of a formal contract, they cannot be held liable for breach of contract until that event has occurred."). Indeed, Kolo cannot refer to – and Kate's has not been able to find -- even a single decision of this Court or of the Second

3

Circuit where an LOI has been held to bind the parties in the face of explicit contrary language in the LOI. Given the "requirement of definiteness," *Missigman*, 131 F. Supp. 2d at 506, the absence of any such case is not surprising, but is fatal to Kolo's claims.

In the face of the uniform case law against it, Kolo relies on a single decision, *Tribune*, in an attempt to support its contention. 670 F. Supp. 491. That case, however, is readily distinguishable from the facts herein. In *Tribune*, unlike here, the document at issue contained explicit language making it a "binding agreement" and it contained many of the essential terms of a lending agreement to which a mortgage term sheet was affixed. *Id.* at 501. Accordingly, this Court (*per* Judge Leval) held that the agreement was what it said it was: a binding preliminary commitment. *Id.* at 508. In its opinion, the Court emphasized that "a party that does not wish to be bound . . . can very easily protect itself by not accepting language that indicates a 'firm commitment' or 'binding agreement.'" *Id.* at 499. Here, the Acquisition LOI not only does not contain language making it a "binding agreement," it contains language directly to the contrary.

In cases since *Tribune*, whenever the parties have evidenced an intent not to be bound, clear language of a preliminary agreement has been held to be of such importance that courts do not even reach the remaining *Tribune* factors. In *Arcadian Phosphates*, for example, the Second Circuit applied the *Tribune* test to a preliminary joint venture agreement that contemplated failed negotiations, included no material terms, and failed to include an <u>express</u> statement that it was a binding agreement. 884 F.2d at 70-71. Refusing to look beyond the first factor, the Circuit Court concluded that the language of the agreement – which it said was the "most important" factor – favored the defendants. *Id.* at 72. *See also Cohen v. Singer*, 4 Fed. Appx. 38, 39 (2d Cir.

4

2001)[1] (finding no binding preliminary agreement where LOI language was described as "an agreement in principle"); *Adjustrite Sys., Inc. v. GAB Business Servs, Inc.*, 145 F.3d 543, 546 (2d Cir. 1998) (finding no binding obligation where a preliminary agreement "nowhere stated that it became a binding agreement the moment it was signed" and was contingent upon the execution of a sales agreement, a letter of intent and two employment contracts).

Similarly, in *Cohen*, this Court (*per* Judge Preska) refused to look beyond the four corners of a lending application that resembled the Acquisition LOI in its language. 273 F. Supp. 2d at 528-29. Unlike the lending agreement in *Tribune*, the agreement in *Cohen* explicitly warned that it was "not a commitment to lend" and that it imposed no obligations on the defendant. *Id.* at 529. Judge Preska concluded that the language of the agreement warranted no further consideration of the remaining *Tribune* factors. *Id.* at 529.

Moreover, Kolo fails to reconcile its position with *Beekman*. In that case, the Court stated that the letter of intent could not have been a Type II binding preliminary commitment obligating the parties to negotiate in good faith because – like the Acquisition LOI – it included an explicit statement of the parties' intent not to be bound. 2006 WL 330323, *7 (S.D.N.Y. 2006). Accordingly, the Court held that the plaintiff could not maintain claims for breach of contract and breach of duty of good faith and fair dealing. *Id.* at *6-7. *Beekman* is entirely consistent with *Missigman*, where this Court granted summary judgment in favor of the defendant on a breach of contract claim because "the parties have clearly expressed an intention not to be bound." 131 F. Supp. 2d at 506. *See also Brown v. Cara*, 420 F.3d 148, 154 (2d Cir.

---

[1] This case is available on-line and for no fee at http://www.CA2.uscourts.gov. The docket number is 00-7776.

5

2005) (holding that a memorandum of understanding was a Type II agreement because it contained no explicit reservation at all regarding its binding nature).

As the Second Circuit aptly stated in *Arcadian Phosphates,* had Kolo wanted the parties to be bound by the Acquisition LOI, it could have "easily protected itself by refusing to accept the language that shows an intent *not* to be bound." 884 F.2d at 73. Thus, Counts I through IV of the Complaint are ripe for dismissal.[2]

### B. The Remaining *Tribune* Factors, While Not Relevant, Nevertheless Defeat Kolo's Claims.

The case law makes clear that this Court should look no further than the explicit language of the Acquisition LOI to discern the true intent of the parties. *Cohen,* 273 F. Supp. 2d 524; *Arcadian Phosphates,* 884 F.2d 69. However, even if the Court were to apply the remaining *Tribune* factors, the Acquisition LOI is not a Type II binding preliminary commitment.

First, Kolo cites no law supporting its argument that the "context" of the "negotiations" of the parties can somehow transform a document that is by its express terms non-binding into one that can support a claim of damages and specific performance. Mere reference to the jumble of documents submitted with the Affidavit of Mr. Werner cannot overcome the clear import of the Acquisition LOI's language.

Second, what Kolo characterizes as its own "partial performance" during a period of less than two weeks cannot evidence the parties' intent to be bound. Kolo's assertion is simply nonsensical given that "[a] party's partial performance does not necessarily indicate a belief that the other side is bound." *Tribune,* 670 F. Supp. at 502 (emphasis added). In fact, subsequent

---

[2] Kolo's responsive papers do not even mention, must less respond to, Kate's arguments for dismissal of the Third Count of the Complaint, thereby providing an additional reason why the Third Count must be dismissed.

cases hold that even substantial partial performance by one party is insufficient to overcome the language of an agreement. *See Missigman,* 131 F. Supp. 2d at 510, and cases cited therein.

In *Missigman*, the plaintiff performed nearly three years of consulting work for the defendant. *Id.* During that time, the plaintiff completed all the benchmarks contemplated by a preliminary agreement between the parties, including securing an underwriter and launching an environmental insurance program in six states. *Id.* at 510-12. Although the Court found that the plaintiff had "substantially performed," it granted summary judgment in favor of defendant because the three remaining *Tribune* factors weighed heavily in favor of the defendant. *Id.* at 510. *See also Arcadian Phosphates*, 884 F.2d at 73 (finding no binding agreement, even though the plaintiff's acts constitute "considerable partial performance"); *Adjustrite*, 145 F.3d at 550-551 ("The one factor that arguably supports a contrary conclusion – partial performance – is not sufficient to raise a genuine issue for trial.").

Kolo argues that it partially performed under the Acquisition LOI by conducting "workout and management services". (Pl.'s Memo. at 11). It submits a hodge-podge of approximately 180 pages of documents – many of which are financial materials generated by Kate's – as well as e-mail correspondence between the parties, dated August 6, 2007 through August 16, 2007. (*See* Werner Aff.). Even assuming that Kolo's numerous allegations about these materials are true, however, such "performance" does not rise to the level displayed in *Missigman*, where the plaintiff consultant accomplished each and every task laid out in a preliminary agreement during a 90-day period and worked for the defendant for an additional two years. 131 F. Supp. 2d at 510. Nor is such "performance" comparable to the plaintiff's partial performance in *Tribune*, where the annuity association committed to lending the defendant $76 million over 14 years. 670 F. Supp. at 499-500. Here, the "performance"

7

reflected in the Werner Affidavit is irrelevant, for neither the Complaint nor the Affidavit allege that Kolo produced any financing for Kate's, perhaps the most essential term contemplated by the LOI. Nor does the Complaint allege completion of any operating agreement or execution of any confidentiality agreement.

Third, Kolo also claims that the parties agreed upon the essential terms of the Acquisition LOI. (Pl's. Memo. at 10). Kolo's claim is an attempt to avoid the fact that in New York there is a "strong presumption against finding a binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." *Tribune*, 670 F. Supp. at 501-502. In *Missigman*, for example, the preliminary agreement contemplated execution of an asset purchase agreement, as well as an employment agreement. 131 F. Supp. 2d at 510. This Court held that this factor weighed in favor of the defendants because the parties never executed either agreement. *Id.* at 511. *See also Adjustrite*, 145 F.3d 543 (transfer agreement left open terms essential to an agreement of its kind).

Here, the Acquisition LOI calls for the subsequent execution of a financing agreement and an operating agreement delineating the rights of the "Kate's and Kolo" partnership. (Versfelt Aff. Ex. A). Kolo does not allege that these documents were ever executed by the parties. The Acquisition LOI also omits numerous terms essential to acquisition of a significant equity interest and a second debt financing, such as terms governing the inspection of assets, indemnification, and representations and warranties, leaving these and other such terms to be "negotiated at a later date." (Versfelt Aff. Ex. A at ¶ 2). The LOI fails to cover these and other salient terms because the parties intended to negotiate, and not consummate, an acquisition.

Finally, the Acquisition LOI contemplates the type of subsequent agreement that is typically committed to writing, and so this remaining *Tribune* factor also weighs heavily in favor of Kate's. The Acquisition LOI contemplates the acquisition by Kolo of a significant interest in Kate's in exchange for securing financing for Kate's "future working needs" and workout and management services, including re-negotiating Kate's outstanding debt. (Versfelt Aff. Ex. A at ¶ 2). An agreement to acquire a substantial interest in another corporation is surely the type of contract that must be committed to writing, and Kolo does not allege otherwise. *See Missigman*, 131 F. Supp. 2d at 511 (considering "the size of the proposed transaction and the complexity of the asset purchase agreement"). Such agreements leave little or no terms open for future negotiation and are often executed contemporaneously with an operating agreement and, in some cases, an employment agreement. Here, the Acquisition LOI hardly covers the terms essential to the acquisition of a significant equity interest or the management of debt financing secured by the assets of a company such as Kate's.

## III. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM NECESSARILY FAILS.

An implied contract arises from the conduct of the parties in the absence of an express agreement. *See Russo v. Banc of America Sec., LLC*, 2007 WL 1946541, *5 (S.D.N.Y. 200); *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399 (S.D.N.Y. 1998). Here, Kolo argues that an implied contract arose from its alleged performance of workout and management activities pursuant to the Acquisition LOI. (Pl.'s Memo. at 11, 14). Thus, Kolo recognizes that its performance was undertaken pursuant to an express agreement in seeking to recover under a theory that requires an absence of an express agreement. Kolo's fundamental assertions are inconsistent with New York law. Even Kolo concedes the flaw of its argument, as it suggests that the Court allow it to amend the Compliant to include additional claims. (Pl's. Memo at 15).

9

## IV.     KOLO'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW.

Kolo relies on *Precision Testing Lab., Ltd. v. Kenyon Corp. of Am.* to advance its argument that Kate's was unjustly enriched by consulting and workout services it provided. 644 F. Supp. 1327 (S.D.N.Y. 1986). But in *Precision Testing*, the plaintiffs did more than perform certain services that marginally benefited the defendants. The Court emphasized that the defendants were enriched because the plaintiff obtained a successful <u>outcome</u> for the defendants. *Id.* at 1350-51. Here, Kolo provided purported consulting services for a mere two weeks, and Kolo has not alleged that it obtained any financing for Kate's or that it garnered for Kate's any successful outcome.

Kolo also argues that *Beekman* is inapplicable to the facts in this case. Kolo is wrong. In *Beekman*, like here, the plaintiff claimed that the "defendants benefited from the legal and financial analysis that [the plaintiff] performed." 2006 WL 33023 at *8-9. This reasoning applies with even greater force in respect to the Shop-in-Shop LOI, as Kolo fails to allege that it provided any services to Kate's in connection with that agreement. Thus, Kate's could not have been unjustly enriched in connection with the Shop-in-Shop LOI.

## CONCLUSION

For the foregoing reasons, Defendant Kate's Paperie, Ltd. respectfully requests the Court to grant its motion for an order, pursuant to Fed. R. Civ. 12(b)(6), dismissing Counts I through IV and IX of the Complaint, with prejudice, and to award such further relief as the Court deems just and proper.

Dated: New York, New York  
        January 29, 2008

Respectfully submitted,

By: ___/s/ David A. Versfelt___  
David S. Versfelt (DV 8935)  
Elizabeth M. Harris (EH 4368)  
KIRKPATRICK & LOCKHART  
 PRESTON GATES ELLIS LLP  
599 Lexington Avenue  
New York, NY 10022-6030  
212-536-3900  
212-536-3901 (fax)  
*Attorneys for Defendant Kate's Paperie, Ltd.*

David S. Versfelt (DV 8935)
Elizabeth M. Harris (EH 4368)
KIRKPATRICK & LOCKHART
 PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212.536.3900
Facsimile: 212.536.3901

Attorneys for Defendant Kate's Paperie, Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
KOLO, LLC,                                             :
                                                       :
                    Plaintiff,                         :
                                                       :
           v.                                          :    No.: 07-Civ.-10653 (CM)
                                                       :
                                                       :    **AFFIDAVIT OF SERVICE**
                                                       :
KATE'S PAPERIE, LTD.,                                  :
                                                       :
                    Defendant.                         :
                                                       :
-------------------------------------------------------x

STATE OF NEW YORK    )
                     )   ss.:
COUNTY OF NEW YORK   )

ELIZABETH M. HARRIS, being duly sworn, deposes and says:

1. I am employed by the firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP, having offices at 599 Lexington Avenue, New York, New York 10022. I am over eighteen years of age and am not a party to this action.

2. On January 29, 2008, I caused to be served by First Class mail a true and correct copy of the **Reply Memorandum of Law in Further Support of the Motion by Defendant Kate's Paperie, Ltd. to Dismiss Counts One Through Four and Nine of the Complaint** by depositing the same, enclosed in a postage paid, properly addressed envelope, in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York, on the following:

        Frank J. Ciano, Esq.
        Robert Varga, Esq.
        Goldberg Segalla LLP
        170 Hamilton Avenue
        Suite 203
        White Plains, NY 10601

3.     I also caused to be served by hand delivery a true and correct copy upon the Honorable Colleen McMahon, U.S.D.J., Daniel Patrick Moynihan Courthouse, 500 Pearl Street, Room 640, New York, New York, 10007.

Sworn to before me this
29th day of January, 2008

_____
Notary Public

                                                      _____
                                                      Elizabeth M. Harris

DEBORAH JEAN CERIA MEYERS
Notary Public, State of New York
No. 31-4831744
Qualified in New York County
Commission Expires September 30, 2009