UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
KOLO, LLC,                                                 :
                                                           :
                        Plaintiff,                         :
                                                           :
            v.                                             :        No.: 07-Civ.-10653 (CM)
                                                           :
                                                           :
                                                           :
KATE'S PAPERIE, LTD.,                                      :
                                                           :
                        Defendant.                         :
                                                           :
                                                           :
-----------------------------------------------------------x

## PREHEARING BRIEF OF KATE'S PAPERIE, LTD

KIRKPATRICK & LOCKHART PRESTON
  GATES ELLIS LLP

DAVID VERSFELT (DV-8935)
ELIZABETH HARRIS (EH-4368)
  599 LEXINGTON AVENUE
NEW YORK, NY 10022-6030
(212) 536-3991

Counsel for *Defendant*
Kate's Paperie, Ltd.

# TABLE OF CONTENTS

Page

I.   KOLO HAS NOT DEMONSTRATED THAT THE PARTIES AGREED TO CLEAR AND BINDING TERMS FOR A SUBLEASE. ................................. 7

   A.   The LOI And Addendum (A) Are Vague And Internally Inconsistent. ........... 7

   B.   The Fact That Neither Party Safeguarded The LOI Confirms That Neither Party Considered The Document Conclusive ........................................ 9

   C.   Lionel Flax, a Non-Lawyer With Little Business Experience, Believed At The Time That The LOI Was Not A Formal Agreement ................................. 10

II.   THE PARTIES CLEARLY DID NOT AGREE TO SUBLEASES FOR STORES OTHER THAN SPRING STREET ............................................................ 10

III.   IF THE LOI CONSTITUTES A SUBLEASE, THEN KOLO HAS CLEARLY AND MATERIALLY BREACHED ITS TERMS. ...................................................... 12

IV.   KATE'S SHOULD BE GRANTED AN ORDER OF EVICTION. ........................... 14

NY-584072 v.2

# TABLE OF AUTHORITIES

## FEDERAL CASES

Arkwright-Boston Manufacturers Mutual Insurance Co. v. Calvert Fire Insurance Co.,
    695 F. Supp. 156 (S.D.N.Y. 1988) ...................................................................12

In re Fidelity Mortgage Investors, 12 B.R. 641 (S.D.N.Y. 1981)........................................12

NL Industrial, Inc. v. PaineWebber Inc., 720 F. Supp. 293 (S.D.N.Y. 1989) ..............13

U.S. v. Real Property and Premises Known as 63-39 Trimble Road, Woodside, N.Y., 860
    F. Supp. 72 (E.D.N.Y. 1994) ......................................................................14

## STATE CASES

Davis v. Dinkins, 206 A.D.2d 365, 613 N.Y.S.2d 933 ...................................................11

Fifty States Management Corp. v. Pioneer Automobile Parks, Inc., 46 N.Y.2d 573, 415
    N.Y.S.2d 800 (N.Y. Ct. App. 1979) .......................................................13

Grand Liberte Cooperative, Inc. v. Bilhaud, 126 Misc. 2d 961, 487 N.Y.S.2d 250 (N.Y.
    App. Term 1st Dep't 1984) ...................................................................13

Harlow Apparel, Inc. v. David Pik International, Inc., 106 A.D.2d 345, 483 N.Y.S.2d 258
    (N.Y. App. Div 1st Dep't 1984) .............................................................11

Hudson River Park Trust v. Basketball City USA, LLC, 22 A.D.3d 422, 803 N.Y.S.2d 58
    (N.Y. App. Div. 1st Dep't 2005) ...........................................................14

Awards.com v. Kinko's, Inc., 42 A.D.3d 178, 834 N.Y.S.2d 147 ...................................13

Nicosia v. Muller, 229  A.D.2d 964, 645 N.Y.S.2d 385 (N.Y. App. Div. 4th Dep't 1996).............9

Webb & Knapp, Inc. v. United Cigar-Whelan Stores Corp., 276 A.D. 583, 96 N.Y.S.2d,
    359 (N.Y. App. Div. 1st Dep't 1950) ....................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KOLO, LLC,                                   :
                                             :
                        Plaintiff,           :
                                             :
            v.                               :        No.: 07-Civ.-10653 (CM)
                                             :
                                             :
KATE'S PAPERIE, LTD.,                        :
                                             :
                        Defendant.           :
                                             :
                                             :
-----------------------------------------------------------x

## PREHEARING BRIEF OF KATE'S PAPERIE, LTD

Defendant Kate's Paperie, Ltd. ("Kate's") respectfully submits this prehearing brief in connection with the motion of Plaintiff Kolo, LLC. ("Kolo") for an injunction to prevent Kate's from acting to remove Kolo from space in Kate's Spring Street store.

## PRELIMINARY STATEMENT

This dispute arises from interpretation of a Letter of Intent and its Addendum (A) relating to a shop-in-shop arrangement whereby Kolo would operate a Kolo shop within Kate's Spring Street store, and possibly in Kate's other stores on Manhattan. Kate's submits that the evidence will show that there was no "meeting of the minds" of the parties sufficient to conclude that the LOI constitutes a binding contract to any degree.

However, even if the evidence regarding the LOI can be interpreted to find it a sublease as to Kate's Spring Street location, the evidence is undisputed as to two critical points: (i) that the LOI and its Addendum (A) do not contain critical terms relating to any location other than

1

Spring Street, and (ii) that Kolo has breached the terms of any sublease in several material respects -- including nonpayment of rent and royalties. Kolo's material breaches entitle Kate's to exercise its right to terminate immediately, and Kate's should not be enjoined from doing so. Indeed, Kate's respectfully requests that Kolo be ordered to vacate the Spring Street premises immediately.

## STATEMENT OF FACTS

The facts as stated below are derived from the allegations in the Complaint; the text of the Shop-in-Shop Letter of Intent ("LOI"), including its nine page Addendum (A); the documentary materials exchanged by the parties; the Witness Statement and deposition of Lionel Flax of Kate's; and the deposition of Mr. Keith Werner of Kolo. Proposed Findings of Fact and Conclusions of Law containing specific citations to the record have been filed along with this Memorandum.

During the period prior to December 2007, Kate's was a family controlled retail entity operating several small stores in and near Manhattan selling stationery products such as journals, gift wrap, photo albums and fine writing instruments. The company had been founded by Leonard Flax, who in 2007 was approaching 80 years of age and was in failing health. As Leonard's health failed, so did the financial state of the company. By early 2007 it was clear that Leonard could not continue to manage the company, and Kate's approached possible bankruptcy.

One of Leonard's two sons – Lionel Flax – agreed to put on hold his career teaching high school English in order to try to save the company by undertaking its day-to-day management. Lionel has no real business background, but the circumstances of the company compelled that he

function as the de facto corporate management. He acted as the executive officer of Kate's in connection with Kolo's shop-in-shop idea, and the LOI that is contested herein.

For years, Kolo had supplied photo albums and photo album accessories to Kate's various stores. Kolo was a member of a Vendors Committee established in early 2007 to work with Kate's to avoid a bankruptcy. Kolo was represented on the Committee by its Executive Vice President, Keith Werner.

Keith Warner suggested the idea of a Kolo "shop-in-shop," which would be an arrangement where Kolo would take some space in Kate's Spring Street store, and perhaps later in Kate's other stores, in return for rental payments and royalties on Kolo sales made at the location.

### The Written Proposal For Shop-in-Shop

In April, 2007, Kolo presented a written proposal for the shop-in-shop idea. The proposal consisted of a 9–page PowerPoint presentation. There is only one version of the proposal -- that is, the proposal has never been modified by either party -- and a copy of it is contained in Defendant's Exhibit Supplement to Proposed Findings of Fact. The document is Exhibit A in that submission; it was and is consistently referred to by Keith Werner and Lionel Flax as "the proposal."

The proposal consists of three illustrations of the suggested floor plan for approximately 450 square feet of the Spring Street location; basic terms regarding lease options, Kate's termination rights, and Kolo payments; and projections of anticipated revenue. Immediately behind the floor diagrams, the proposal contains a page entitled "SOHO Proposal (Basic Terms)" that outlines the following:

- a lease term of one year, with 3 one-year renewal options;

- a "Right to Terminate": Kate's could terminate the lease after the first year if Kolo is not "continuing to pay Kate's a minimum of $140/Per Square Foot plus 6% Royalty."

- Kolo would provide Kate's with monthly point-of-sale ("POS") data;

- Kolo would make "monthly" rental and "monthly" royalty payments, with the dollar amounts of each based on certain sales levels shown in the "Financial Proposal" page; and

- Kate's would obtain a landlord consent and non-disturbance agreement.

The following page of the proposal document is entitled "Financial Proposal," and provides financial terms. That page states that Kolo will pay a "Starting Rent" of $75.00 per square foot and a "Starting Royalty" of 6%. Royalty rate increases and rent increases are set forth for rising net sales levels, and royalty payment rate increases are set forth for increased net sales. The "Starting Royalty" line does <u>not</u> state that Kolo's obligation to pay royalties will not begin to accrue until net sales reach any particular level.

### The Letter of Intent ("LOI")

In early May, while discussions between the parties were continuing, Lionel Flax was eager to make arrangements to have Kolo open a shop-in-shop at the Spring Street store by June 1, 2007, when that store was scheduled to become a Kate's Paperie location. On May 6, 2007, Keith Werner emailed Lionel Flax what Mr. Werner characterized as a two page "draft" letter of intent. It had been drafted by Keith Werner, perhaps with input from his attorney. There is only one version of the Letter of Intent, for it was never edited or modified by either party, and both Kolo and Kate's have provided it to the Court in previous filings. In addition, a copy is Exhibit B in Defendant's Exhibit Supplement.

The LOI by its terms contemplates subsequent negotiations and more than one subsequent agreement.

- The very first line of the LOI states that the "following confirms the understanding for which the parties have agreed to in principal to enter into a contract ...."

- The last sentence of the first paragraph of the LOI states that Kate's and Kolo intend to "enter into a more formal agreement on the following terms of the contract within a reasonable time."

- The final sentence of Paragraph 1 of the LOI states that "at the same time as this Agreement is entered into, the parties will also conclude a rental agreement."

- Just above the signature lines on page 2 of the LOI, it says that by "signing below each party agrees and consents [sic] to the above mention [sic] terms and agrees to act in good faith to complete the negotiations for additional terms which will be set forth in the Agreement."

Lionel Flax did not show the LOI to Kate's attorneys or his father or anyone else at Kate's because he did not think it was a formal agreement.  His testimony is clear:  he certainly did not consider the LOI to be a binding lease for a period that could go on for years and years. He thought that he and Keith Werner would negotiate over the terms proposed by Kolo, but they never did.  Within a day or so of receiving the LOI from Keith Werner, Lionel Flax emailed back that he had "signed it."

Lionel Flax does not remember signing the LOI on the signature line or on any other page.  He has no recollection *one way or the other* about signing the LOI.  Kate's and Lionel Flax have searched extensively for a signed copy of the LOI and cannot find one anywhere.  But an email from Keith Werner dated May 12 indicates that he received a "signed" copy from Lionel Flax.  See Exhibit E to Defendant's Exhibit Supplement.

On May 12, 2007, Keith Werner emailed Lionel Flax saying that he had received the LOI and that he would bring "a copy of the signed LOI" to a luncheon meeting that they were to have with two Japanese businessmen the following Tuesday. Lionel Flax has no recollection that Mr. Werner did so, and neither does Mr. Werner. Lionel Flax never asked for a signed copy because he did not consider the document all that significant.

For his part, Mr. Werner has testified that he recalls receiving an executed signature page (and perhaps more) from Lionel Flax, but cannot recall what he did with whatever he received. He has testified that he, too, may have signed the LOI, but no one has been able to find a copy of the LOI signed by anyone.

### Kolo's Shop-In-Shop Store At Spring Street

On or about June 1, 2007, consistent with the overall plan that Kate's and Kolo hoped to negotiate, Kolo began operating the shop-in-shop at the Spring Street store. Kate's allowed Kolo to move in because Lionel Flax continued to expect that details of a lease agreement for Spring Street would be negotiated to the satisfaction of both parties.

It soon became clear, however, that the shop-in-shop arrangement was not going smoothly. Kolo did not pay rent during June or July, but paid rent for June through August in August. Given Kate's financial straits at that time, Lionel Flax did not contest the dollar amounts that Kolo paid.

On November 7, 2007, Kate's received a letter from Kolo's attorneys advising that Kolo would no longer pay rent for the Spring Street location "until the existing differences between the parties are resolved," and that its rental payments would be held in escrow. No rent payment of any size has been made to Kate's since as early as September 2007, a period of seven months.

As for royalties, in August Lionel Flax contacted Keith Werner with concern that Kate's had not received any royalties at all from the shop-in-shop. On August 20, 2007, Mr. Werner responded that Kolo would pay royalties on a quarterly basis "according to our recent agreement," and did not state that royalties were not due until a higher sales level was achieved. Mr. Flax had not agreed to quarterly royalty payments, and to the extent Mr. Werner was relying on the terms of the proposal, the proposal provides for monthly royalty payments.

Even if royalties were only to be paid quarterly, Kolo has not paid any royalties at all to Kate's.

## ARGUMENT

I.     **KOLO HAS NOT DEMONSTRATED THAT THE PARTIES AGREED TO CLEAR AND BINDING TERMS FOR A SUBLEASE.**

The evidence adduced undermines the claim that Kolo and Kate's knowingly agreed to definite terms to govern the Kolo shop-in-shop at the Spring Street store or anywhere else. Neither Mr. Werner nor Mr. Flax focused on the vague and internally inconsistent wording of the "draft" LOI and its Addendum (A), and Lionel Flax never understood that the LOI would create a sublease. The fact that neither party can produce a copy of the LOI executed by anyone further supports the conclusion that neither party at the time considered the document to be significant.

### A.     The LOI And Addendum (A) Are Vague And Internally Inconsistent.

The LOI is entitled "Letter of Intent," which to the non-lawyer Mr. Flax indicated nothing more than an "agreement to agree." As recognized by Mr. Werner, who proposed the "draft" LOI to Mr. Flax, the language of the document is ambiguous and in many ways

confusing with regard to whether the document itself was to create any binding obligations. For example, the very first line of the LOI uses a future tense construction that "the parties have agreed in principal [sic] to enter into a contract. . . ." That paragraph appears to define that future "contract" using the capitalized term "Agreement," and there are places in the LOI that use the term "Agreement" to indicate the LOI itself. LOI, ¶s. 1, 7 and 9. But the initial paragraph of the LOI contradicts a construction that the "Agreement" is the LOI itself because it refers to "a more formal agreement" that "the parties *will* enter into" at some point in the future. Further, the language of the LOI appearing immediately above the signature lines again speaks unmistakenly in the future tense when it refers to "additional terms which *will* be set forth in the Agreement."

Further, the LOI specifically refers to additional documentation that will be needed to implement any understanding of the parties reflected in the LOI, including a landlord consent (Paragraph 1), compensation schedules for any proposed store spaces apart from the Spring Street location (Paragraph 7), and – most significantly – a "rental agreement" that the parties "will also conclude." (Paragraph 1) The "rental agreement" specifically referred to in the LOI is one of the documents that the parties "will conclude" in the future. Kolo's position that the LOI itself was intended to constitute a sublease is thus too attenuated.

In addition, there are inconsistencies between the wording of the LOI text and the Addendum (A) which it incorporates. Paragraph 8 of the LOI presents the "**Term**" of any sub-lease as one year, with Kolo having a right to renew indefinitely so long as Kolo provides timely notice each year of its desire to renew. Yet in the "Basic Terms" page of Addendum (A), the PowerPoint proposal sets forth a one-year lease with only three one year options. And that same

page in the Addendum provides Kate's with a "Right to Terminate" after the first year and each

subsequent year if Kolo is not by then "continu[ing] to pay Kate's a minimum of $140/Per

Square Foot plus 6% Royalty."

Finally, the preliminary nature of the LOI is manifested by the absence from it of

basic terms that would typically appear in any sublease prepared with an intention to bind the

parties.  Of particular importance here is the absence of any definition of "default," any

delineation of a right to "cure," any listing of remedies, and a whole host of other provisions that

would have indicated to Mr. Flax that Mr. Werner's "draft" was intended to constitute a binding

obligation with regard to the Kolo shop at Spring Street.

**B.     The Fact That Neither Party Safeguarded The LOI Confirms That Neither
        Party Considered The Document Conclusive.**

The fact that neither party can produce a copy of the LOI executed by a

representative of either of them is a further indication that the document was at the time not

considered by either party to constitute a binding agreement.  Mr. Flax's inability to produce a

copy signed by him is consistent with his testimony that he considered the document only an

agreement to continue discussions with Mr. Werner regarding the shop-in-shop for the Spring

Street store.  Mr. Werner's inability to produce an executed copy – or even to testify with

confidence that he signed – speaks loudly with regard to the significance that he placed on the

document at the time.  His testimony that he cannot recall what he did with the faxed copy of

whatever he received from Mr. Flax undermines Kolo's assertions that the LOI should be

deemed a formal, binding document.  Indeed, there is case law for the proposition that a party

unable to explain adequately why it cannot produce a copy of an agreement that it asserts was

executed can be entirely precluded from benefiting from the document.  Nicosia v. Muller, 229

A.D.2d 964, 965, 645 N.Y.S.2d 385, 386 (N.Y. App. Div. 4th Dep't 1996); <u>Webb & Knapp, Inc.</u>

<u>v. United Cigar-Whelan Stores Corp.</u>, 276 A.D. 583, 584, 96 N.Y.S.2d, 359 (N.Y. App. Div. 1st

Dep't 1950).

       **C.**      **Lionel Flax, a Non-Lawyer With Little Business Experience, Believed At The Time That The LOI Was Not A Formal Agreement.**

      The testimony relating to Mr. Flax's brief review and fax of the LOI is clear as to

his reaction to the document: he never discussed the text of the LOI with Mr. Werner after he

received it.  (Flax Witness Statement)  He never discussed the text of the LOI with any other

representative of Kate's.  He never discussed the text of the LOI with any attorney.  His actions

may in retrospect have been naïve, but they were clearly consistent with his view of the

document.  He believed at the time that the LOI looked forward in time to the negotiation and

finalization of a "rental agreement" and other more formal documents that would provide terms

to govern the Kolo shop at the Spring Street store.

## II.     THE PARTIES CLEARLY DID NOT AGREE TO SUBLEASES FOR STORES OTHER THAN SPRING STREET.

      A review of the LOI and Addendum (A) demonstrates beyond dispute that they

address only the Spring Street location with regard to (i) the location of any shop-in-shop; (ii) the

timing and term of any sublease; and (iii) the payment terms to govern Kolo's space.  In the

absence of any terms in the LOI or the Addendum (A) addressing these critical lease terms for

any location other than Spring Street, there can be no conceivable sublease for any location other

than at that store.

      The LOI makes explicit that it is <u>not</u> encompassing specific terms for any store

other than Spring Street.  Addendum (A) "defines the agreed upon space at the Spring Street

Store" by setting forth the "[l]ayout and drawings" for the Spring Street space. (Paragraph 1) In contrast, Paragraph 7 of the LOI appears to establish a process whereby specific layout drawings for any future stores will be set forth in future Addenda. The testimony that has been adduced is uncontested that there is nothing in the LOI or Addendum (A) identifying floor plans or diagrams for any other location. (Werner Tr. At 139:14 – 141:11.)

Nor does the LOI set forth a clear start date for subleases at any location other than Spring Street. Paragraph 3 states a "June 1, 2007" start date for Spring Street, but leaves the start of any additional store locations to be determined, stating only that they might commence "approximately one month thereafter" following "discussions to come to a mutual agreement for the specific locations. . . . "  The text of the LOI itself refutes any contention that the document establishes a commencement date sufficient to govern Kate's stores at 3rd Avenue or 57th Street.

Finally, the document and the testimony are clear that the financial terms set forth in Addendum (A) encompass only the Spring Street store, and do not refer to any other location. (Werner Tr. 148:21 – 152:14.)

In the absence of essential lease terms for locations other than Spring Street, including a specific start date, a particularized location within the Kate's property, and a specific price to be paid for the space, no sublease could possibly have been created for any location other than Kate's Spring Street store. Davis v. Dinkins, 206 A.D.2d 365, 366-67, 613 N.Y.S.2d 933, 935 (N.Y. App. Div. 2d Dep't 1994 ("[i]n order for an agreement … to be enforceable as a lease, all the essential terms must be agreed upon"); see Harlow Apparel, Inc. v. David Pik Int'l, Inc., 106 A.D.2d 345, 345-46, 483 N.Y.S.2d 258, 260 (N.Y. App. Div 1st Dep't 1984).

## III.   IF THE LOI CONSTITUTES A SUBLEASE, THEN KOLO HAS CLEARLY AND MATERIALLY BREACHED ITS TERMS.

The evidence adduced is clear and undisputed:  Kolo has not made any payments to Kate's as "rent" since at least as long ago as August 2007 – a period of more than seven months.  (Flax Witness Statement, ¶30; Werner Tr. 216:20-217.9)  In November 2007, Kolo provided a letter from an attorney asserting that the rent payments were being put in escrow "until the existing differences between the parties are resolved," Exhibit G to Defs. Exhibit Supplement, and there is no dispute that Kate's has not received any payments at all since that date.

Furthermore, Kolo has never paid Kate's any royalties at any time while it has occupied the space at Spring Street.  (Werner Tr. 178:6-180:10; 215:24-216:12)  Kolo may now dispute whether it has an obligation to do so, asserting that Addendum (A) does not obligate it to pay royalties until it has reached a lever of $250,000 in net sales.  But the "Financial Proposal" page of Addendum (A) sets forth a "Starting Royalty" rate of 6% without any qualification on the word "starting," and the term would appear in context to mean the same as it does when it appears immediately above, in "Starting Rent," i.e., an obligation that begins with the very start of any sublease.  In this context, the well-established rule of construction that unclear or ambiguous terms should be construed against their drafter mandates that the royalty provision of Addendum (A) be interpreted to require that Kolo pay royalties from its first ("Starting") dollar of net sales. Arkwright-Boston Mfrs. Mut. Ins. Co. v. Calvert Fire Ins. Co., 695 F. Supp. 156, 160 (S.D.N.Y. 1988); In re Fidelity Mortgage Investors, 12 B.R. 641, 645 (S.D.N.Y. 1981). Kolo has not done so.

There are other breaches by Kolo of the understanding of the parties. For example, it has never established the internet photo album bar, which appears in the floor diagrams of Addendum (A) and was considered by Lionel Flax to be an integral part of the shop-in-shop concept. (Flax Witness Statement at Para. 33.) And it had not produced point of sale date until the day after Mr. Werner's deposition herein, on February 13, 2007.

The failure of Kolo to provide rent and royalties during its occupation of the Spring Street space, along with its other failures in implementing the Spring Street shop-in-shop, constitute material breaches of any sublease created by the LOI and Addendum (A). Awards.com v. Kinko's, Inc., 42 A.D.3d 178, 187, 834 N.Y.S.2d 147 (N.Y. App.Div. 1st Dep't 2007; Fifty States Management Corp. v. Pioneer Auto Parks, Inc., 46 N.Y.2d 573, 575, 415 N.Y.S.2d 800 (N.Y. Ct. App. 1979); see also NL Indus., Inc. v. PaineWebber Inc., 720 F. Supp. 293, 299 (S.D.N.Y. 1989).

There is no basis in the LOI or Addendum (A) to provide Kolo with an opportunity to cure is breaches. Absent any right to cure in the subject commercial lease, the law will not imply a right to cure. RPAPL Section 753, which gives a residential tenant ten days to cure a default, is inapplicable to commercial leases. See Grand Liberte Coop., Inc. v. Bilhaud, 126 Misc.2d 961, 964, 487 N.Y.S.2d 250 (N.Y. App. Term 1st Dep't 1984). Similarly, a tenant's right to obtain a stay of eviction by depositing the rent pursuant to RPAPL 751(1a) "has been held to apply only to summary proceedings brought to enforce a condition subsequent that terminates a lease." NL Indus., Inc., 720 F.Supp. at 299. This case involves a commercial lease, and is not a summary proceeding; hence, Kolo has no statutory right to cure.

## IV.    KATE'S SHOULD BE GRANTED AN ORDER OF EVICTION.

Kate's submits that this Court is authorized to enter an order directing Kolo to vacate the Spring Street store and awarding possession to Kate's. New York real property law would appear to permit this Court to issue a writ of assistance directing the City Marshall or any Sheriff to the City of New York to remove Kolo, RPAPL Section 221, but a decision and order of this Court may in the alternative contain a decretal paragraph that should bind the parties to the same end.  See U.S. v. Real Property and Premises Known as 63-39 Trimble Road, Woodside, N.Y., 860 F. Supp. 72, 76 (E.D.N.Y. 1994); Hudson River Park Trust v. Basketball City USA, LLC, 22 A.D.3d 422, 423, 803 N.Y.S.2d 58 (N.Y. App. Div. 1st Dep't 2005).

- 14 -

## CONCLUSION

There are substantial reasons to conclude that no formal agreement for any sublease at all was reached by the parties via the LOI and its Addendum (A). Certainly there was no sublease created for any space apart from Kate's Spring Street store. However, if a valid sublease exists as to the Spring Street store, Kolo has materially breached its terms in several respects and does not have a right to cure. As a consequence, Kate's respectfully requests an order from this Court (i) directing Kolo to vacate the Spring Street space and (ii) awarding possession to Kate's.

Respectfully submitted,

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP

By: _David Versfelt_____

David Versfelt (DV-8935)
Elizabeth Harris (EH-4368)

599 Lexington Avenue
New York, NY 10022-6030
(212) 536-3991

Counsel for *Defendant*
Kate's Paperie, Ltd.

February 15, 2008