Frank J. Ciano, Esq. (FJC – 4981)
Robert Varga, Esq. (RV – 0636)
GOLDBERG SEGALLA LLP
*ATTORNEYS FOR PLAINTIFF*
*KOLO RETAIL, LLC*
170 Hamilton Avenue, Suite 203
White Plains, New York 10601
Tel: (914) 798-5410
Fax: (914) 798-5401
fciano@goldbergsegalla.com
rvarga@goldbergsegalla.com



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOLO RETAIL, LLC,<br><br>      Plaintiff,<br><br>-against-<br><br>KATE'S PAPERIE, LTD.,<br><br>      Defendant. | 07 CIV. 10653<br><br>**SECOND AMENDED<br>COMPLAINT**<br><br>**JUDGE: McMAHON**<br><br>Plaintiff Demands a Jury Trial |

Plaintiff, by its attorneys, GOLDBERG SEGALLA LLP, by way of complaint, *inter alia*, for declaratory judgment pursuant to 28 U.S.C. §2201(a), against Defendant, KATE'S PAPERIE, LTD., complains of the defendant and alleges upon information and belief as follows:

**PARTIES**

1.    The Plaintiff, KOLO RETAIL, LLC (hereinafter "KOLO"), a Delaware limited liability company with a business location at 241 Asylum Street, Hartford, Connecticut 06103, is in the business of selling, on a retail and wholesale basis, photo presentation and storage products, including photo albums, storage boxes, journals and accessories to its customers.

2.    The Defendant, KATE'S PAPERIE, LTD. (hereinafter "KATE'S PAPERIE"), a domestic company organized and existing by virtue of the laws of the state of New York with a

principal business located at 460 West 34th Street, New York. New York 10001, is in the business of selling, on a retail basis, paper, journals, desk accessories, photo albums, frames, ribbon, giftwrap, and planners.

3.      The Defendant, KATE'S PAPERIE, a domestic company organized and existing by virtue of the laws of the state of New York with a principal business located in New York County, is in the business of selling, on a retail basis, paper, journals, desk accessories, photo albums, frames, ribbon, giftwrap, and planners.

## JURISDICTION

4.      The amount in controversy herein exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (diversity of citizenship).

6.      Venue is proper within this District pursuant to 28 U.S.C. §1391(a).

## BACKGROUND

7.      On or about May 9, 2007, the parties entered into a Letter of Intent (hereinafter Shop-in-Shop Agreement") for KOLO to sub-lease approximately 450 square feet of the premises located at 72 Spring Street, New York, New York for a period of one year with the right to renew for additional one (1) year terms.  The Shop-in-Shop Agreement is attached as Exhibit "1."

8.      On or about May 9, 2007 Mr. Lionel Flax on behalf of KATE'S PAPERIE signed the subject Shop-in-Shop Agreement.

9.      On or about May 9, 2007, by signing said Shop-in-Shop Agreement, Mr. Flax accepted the terms and conditions therein.

10.    On or about August 2, 2007, the parties entered into a Letter of Intent for KOLO to acquire 20% equity interest in KATE'S PAPERIE in consideration for KOLO providing, *inter alia*, certain workout and management services to KATE'S PAPERIE (hereinafter the "Acquisition LOI").

11.    Said workout and management services were to be provided by KOLO to assist KATE'S PAPERIE in reorganizing its financial and operational condition.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BREACH OF AGREEMENT TO NEGOTIATE IN GOOD FAITH)

12.    KOLO repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "11" as if each were more fully set forth at length herein.

13.    Pursuant to the Acquisition LOI, KATE'S PAPERIE agreed to act in good faith to complete the negotiations for additional terms that were to be set forth in a final Agreement between the parties.

14.    On the basis of the terms set forth in the Acquisition LOI, KOLO proceeded in good faith to perform services, including the aforementioned workout and management services in anticipation of acquiring a 20% equity interest in KATE'S PAPERIE.

15.    Despite the agreed upon terms of the Acquisition LOI, KATE'S PAPERIE has refused to negotiate in good faith with KOLO.

16.    In addition, KATE'S PAPERIE engaged in discussions with third parties in which it solicited offers for its assets or securities, and in which it negotiated with respect to the disposition of its assets or securities, all in violation of the terms of the Acquisition LOI.

17.    As a result of the foregoing actions, KATE'S PAPERIE has breached said duty to act in good faith, has manifested a clear and conscious design to mislead and deceive KOLO and has acted in bad faith.

18.    KATE'S PAPERIE has willfully and intentionally breached said duty.

19.    As a result of said breach of the duty of good faith, KOLO has suffered substantial damages, including but not limited to out-of-pocket expenses and other expenses incurred in connection with the workout and management services that it provided to KATE'S PAPERIE.

20.    As a further result of the aforementioned breach of duty by KATE'S PAPERIE to negotiate in good faith, KOLO was forced to forego other investment opportunities, and incur other financial loss, all to its loss and detriment.

## AS AND FOR A SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT)

21.    KOLO repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "20" as if each were more fully set forth at length herein.

22.    On or about May 9, 2007, the parties entered into a Shop-in-Shop Agreement whereby KATE'S PAPERIE agreed to provide KOLO with rental space to operate a retail store within three KATE'S PAPERIE stores located on Spring Street, 3rd Avenue, and 57th Street in New York, New York.

23.    Further, the Shop-in-Shop Agreement provided that KOLO would begin operating its first retail store within the KATE'S PAPERIE store located on Spring Street on or about June 1, 2007, with the other two locations opening shortly thereafter.

24.    Pursuant to the Shop-in-Shop Agreement, KOLO proceeded in good faith by opening its first retail store at the Spring Street location in anticipation of opening the other two locations shortly thereafter.

25.    On or about June 1, 2007, KOLO opened its first retail store at the 72 Spring Street location.

26.    Despite the agreed upon terms of the Shop-in-Shop Agreement, KATE'S PAPERIE has refused to provide KOLO with rental space in its stores located on 3rd Avenue and 57th Street.

27.    KOLO has performed all of its obligations under the Shop-in-Shop Agreement.

28.    KATE'S PAPERIE has materially breached its contractual obligations by failing to provide KOLO with rental space in the KATE'S PAPERIE stores located on 3rd Avenue and 57th Street.

29.    As a result of the aforementioned conduct by KATE'S PAPERIE, KOLO has suffered financial damages, including but not limited to expenses incurred in connection with the opening of a retail store within the KATE'S PAPERIE store located on Spring Street.

30.    As a further result of the aforementioned breach by KATE'S PAPERIE, KOLO has foregone other investment opportunities, and incurred other financial loss, all to its loss and detriment.

31.    KOLO is willing and able to perform under the Shop-in-Shop Agreement according to its obligations.

32.    Under these circumstances, KATE'S PAPERIE should be compelled to specifically perform its obligations under the Shop-in-Shop Agreement, including without

limitation providing KOLO with rental space at the KATE'S PAPERIE stores located on 3rd Avenue and 57th Street.

33.    KATE'S PAPERIE refuses to perform and is in breach of its obligations under the terms and conditions of the Shop-in-Shop Agreement.

34.    KOLO stands ready, willing, and able to perform the terms of the Shop-in-Shop Agreement and to consummate the transactions contemplated therein.

35.    On or after December 20, 2007, KATE'S PAPERIE caused a Notice of Termination to be served upon KOLO, which stated that KOLO'S possession and occupancy of the premises located at 72 Spring Street, New York, New York would terminate as of January 31, 2008.

36.    KATE'S PAPERIE further breached the Shop-in-Shop Agreement by serving the aforementioned Notice of Termination and said conduct caused KOLO to incur costs and expenses, including reasonable attorneys' fees, in defending against and taking actions in connection with said Notice of Termination.

37.    KATE'S PAPERIE also commenced summary proceedings against KOLO, which is in further breach of the Shop-in-Shop Agreement.

38.    If KATE'S PAPERIE is allowed to proceed with the summary proceedings against KOLO, KOLO will lose possession of the store at the Spring Street location, KOLO would lose its right to renew as per the Shop-in-Shop Agreement, and will be irreparably harmed thereby, including without limitation loss of customers, loss of good will, loss of visibility and market presence and loss of business reputation all of which to its detriment.

39.    As such, KATE'S PAPERIE should be compelled to pay KOLO damages.

40.    KOLO also requests that this Court declare, pursuant to 28 U.S.C. §2201(a) that (a) the Shop-in-Shop Agreement is valid and binding upon the parties, (b) that the Shop-in-Shop Agreement created a sub-lease for the three locations for initial one (1) year term with the right to renew for subsequent terms, and (c) the Notice of Termination is void and null because it was served in violation of the terms of the Shop-in-Shop Agreement.

## AS AND FOR A THIRD CAUSE OF ACTION
## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALINGS)

41.    KOLO repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "40" as if each were more fully set forth at length herein.

42.    As part of its contractual relationship under the Shop-in-Shop Agreement, KATE'S PAPERIE has a duty of good faith and fair dealing with KOLO.

43.    As a result of the foregoing actions, KATE'S PAPERIE has breached said duty of good faith and fair dealing, has manifested a clear and conscious design to mislead and deceive KOLO and has acted in bad faith.

44.    KATE'S PAPERIE has willfully and intentionally breached said duty.

45.    As a result of said breach of the duty of good faith and fair dealing, KOLO has suffered substantial damages, including but not limited to expenses incurred in connection with the opening of a retail store within the KATE'S PAPERIE store located on Spring Street.

46.    As a further result of the aforementioned breach of the duty of good faith and fair dealing by KATE'S PAPERIE, KOLO was forced to forego other investment opportunities, and incur other financial loss, all to its loss and detriment.

47.    As a further result of the breach by KATE'S PAPERIE, KOLO has been irreparably harmed and has no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (PROMISSORY ESTOPPEL)

48.    KOLO repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "47" as if each were more fully set forth at length herein.

49.    KATE'S PAPERIE made a clear and definite promise to KOLO that it would provide KOLO with rental space at the KATE'S PAPERIE stores located on Spring Street, 3rd Avenue and 57th Street.

50.    In reasonable and foreseeable on this promise, KOLO incurred significant expenses in connection with the opening of a retail store within the KATE'S PAPERIE store located on Spring Street, in anticipation of opening additional retail stores at the other two locations shortly thereafter.

51.    KATE'S PAPERIE reasonably could have expected that its promise would induce KOLO's reliance on it.

52.    KOLO relied on KATE'S PAPERIE's promise to its detriment, resulting in costs, expenses and other economic damages, including but not limited to expenses incurred in connection with the opening of a retail store within the KATE'S PAPERIE store located on Spring Street, lost profits and loss of other business opportunities in monetary amounts that are difficult to assess and/or measure.

53.    If KATE'S PAPERIE's agreement to abide by the terms of the contract is not enforced, an injustice will occur.

54.    As a result of the breach by KATE'S PAPERIE, KOLO has been irreparably harmed and has no adequate remedy at law.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (BREACH OF IMPLIED CONTRACT)

55.    KOLO repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "54" as if each were more fully set forth at length herein.

56.    The KATE'S PAPERIE expressed its assent to the terms and conditions of the Shop-In-Shop Agreement by allowing certain pre-closing activities to occur.

57.    KATE'S PAPERIE thereafter breached the Shop-In-Shop Agreement, which was implied in fact, by failing to consummate the transactions contemplated by the Shop-In-Shop Agreement.

58.    As a result of the breach by the defendant, KOLO has been irreparably harmed and has no adequate remedy at law.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (UNJUST ENRICHMENT)

59.    KOLO repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "58" as if each were more fully set forth at length herein.

60.    The actions of KOLO as recited herein directly benefited and enriched Defendant.

61.    As a result of KATE PAPERIE's breaches as recited herein, KATE PAPERIE has been unjustly enriched in an amount to be determined at trial, plus interest, costs, and disbursements.

62.    KOLO further reserves its right to pursue quasi-contract theories of liability in the event, however unlikely, that KATE PAPERIE chooses to contest the validity of the Contract.

63.     As a result of the breach by the defendants, KOLO has been irreparably harmed and has no adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

64.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in the foregoing paragraphs enumerated "1" through "63" as if each were more fully set forth at length herein.

65.     At various times between approximately December 15, 2006 and April 11, 2007, KOLO sold and delivered a variety of goods to KATE'S PAPERIE, including photo albums and related items and goods.

66.     KATE'S PAPERIE agreed to pay KOLO for the aforementioned goods, in a total amount of $29,177.57 on demand.

67.     KATE'S PAPERIE has not paid for the said goods and KOLO, LLC is entitled to damages for this breach.

**WHEREFORE**, the Plaintiff, KOLO RETAIL, LLC, request that this court enter judgment as follows:

1.     Monetary and compensatory damages against Defendant;

2.     Order of specific performance directing the Defendant to provide KOLO with rental space at the Defendant's stores located on 3rd Avenue and 57th Street in New York, New York.

3.     Declaring that (a) the Shop-in-Shop Agreement is valid and binding upon the parties, (b) that the Shop-in-Shop Agreement created a sub-lease for the three locations for initial one (1) year term with the right to renew for subsequent terms, and (c) the Notice of Termination is void and null because it was served in violation of the terms of the Shop-in-Shop Agreement.

5.     Costs of collection; and

6.     Such other and further equitable relief as the court may deem appropriate.

Dated:  White Plains, New York
        March 17, 2008

By:_____

        Frank J. Ciano, Esq. (FJC – 4981)
        Robert Varga, Esq. (RV – 0636)
        GOLDBERG SEGALLA LLP
        *ATTORNEYS FOR PLAINTIFF*
        *KOLO RETAIL, LLC*
        170 Hamilton Avenue, Suite 203
        White Plains, New York 10601
        Tel: (914) 798-5410
        Fax: (914) 798-5401
        fciano@goldbergsegalla.com
        rvarga@goldbergsegalla.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT** was served via regular mail on this 17th day of March, 2008, upon:

David S. Versfelt, Esq.
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
**ATTORNEYS FOR DEFENDANT
KATE'S PAPERIE, LTD.**
599 Lexington Avenue
New York, New York 10022

_____
Robert Varga, Esq. (RV - 0636)

104518.1



Letter of Intent

between

## Kate's Paperie LTD and Affiliates.,

hereinafter named "Kate's"
and

## Kolo Retail, LLC,

hereafter named "Kolo"

The following confirms the understanding for which the parties have agreed to in principal to enter into a contract hereinafter called ("Agreement") for Kolo to lease retail space from Kate's Paperie, LLC and to operate a retail store within each of three Kate's stores.  It is intended that the parties will enter into a more formal agreement on the following terms of the contract within a reasonable time.

1.  **Locations and Demised Premises** - Kate's commits to Kolo to provide rental space in the following three of it's Manhattan, NY locations; Spring Street, 3rd Avenue, and 57th Street.  Kolo Retail, LLC is hereby committing to displaying and selling products only within the dedicated space. The size of each location shall vary between 250 square feet to 450 square feet. The attached Addendum (A) defines the agreed upon space at the Spring Street Store.  Layout and drawings showing such dedicated space is attached hereto in Addendum (A).  Together with and at the same time as this Agreement is entered into, the parties will also conclude a rental agreement, and Kate's will provide Kolo a consent from the current landlord(s) for such rights to sub-lease.

2.  **Fixtures, Furnishings & Equipment** - Fixtures, furnishings and equipment such as displays, computers, tables, etc. shall be completely provided by  and owned by Kolo.  Other improvements or build out shall be discussed and agreed upon between the parties at a later date.

3.  **Commencement** - The commencement of the first Kolo retail store within the Kate's store concept will begin on or around June 1, 2007 located on Spring Street.   The other locations, 3rd Avenue and 57th Street, will commence approximately one month thereafter.    Both parties shall begin discussions to come to a mutual agreement to the specific locations for the 3rd Avenue and 57th Street locations by June 1, 2007. Notwithstanding the above, should both parties fail to mutually agree to the locations of the other Kate's stores then Kolo shall have the right to terminate the Agreement, vacating the Spring Street location, by giving a 30 day notice to Kate's.

4.  **Staff and Payroll Expenses** - Kolo shall provide its own representatives, employees and staff to operate each store within Kate's store.  Both parties have agreed that in the event it becomes necessary to utilize Kate's staff, whether on a part-time or full-time basis, Kolo shall reimburse Kate's for any payroll expenses.

5. **Inventory** - Upon commencement of each location, starting with the Spring Street location, Kolo will agree to accept responsibility of the current inventory that Kate's provides to Kolo for that location. All inventory must be in saleable condition when provided by Kate's. At the time of commencement, for each additional store, Kolo will issue a credit memo to Kate's for receiving such qualified inventory.

6. **Insurance** - Kolo will agree to insure all contents inside the demised premises.

7. **Compensation** - Each location shall have its own profit and loss projections and compensation schedule which will describe the amount to be paid to Kate's. It is agreed that each compensation schedule will be attached as an additional addendum and made apart of the Agreement. The compensation schedule for Spring Street is also attached hereto in Addendum (A). Kolo shall compensate Kate's according to the compensation schedule set forth in Addendum (A) for the Spring Street location and according to future addendums for the other locations as they are agreed upon. Each location shall have its own projections and compensation schedule which shall describe the amount to be paid to Kate's. It is agreed that each compensation schedule will be attached as an additional addendum and made apart of the Agreement. Compensation to Kate's will be in the form of base rental income plus an additional royalty income which formula is also set forth in the compensation schedule and attached to the Agreement.

8. **Term** - The term of each sub-lease will be for one year from the commencement date. Kolo shall retain the right to renew each sub-lease for an additional one year period, and each year thereafter as it becomes due by giving 60 day notice to Kate's prior to the termination date.

9. **Confidentiality** - Both parties agree to keep all information about the terms of this Agreement confidential. Both parties also acknowledge that they have signed a Mutual Confidentiality Agreement prior to entering into this Agreement stating to keep all information confidential.

By signing below each party agrees and conscents to the above mention terms and agrees to act in good faith to complete the negotiations for addtional terms which will be set forth in the Agreement.

Kolo Retail, LLC

_____          _____
By it's                                                          Date

Kate's Paperie LTD and Affilitates

_____          _____
By it's                                                          Date





**Kolo Store at the new SOHO location**

April 2007



# SOHO floor plan







KOLO

# SOHO Proposal (Basic Terms)

1. Lease Term – One Year

2. Lease Options – Kolo has the right to (3) One Year Options.

3. Right to Terminate – Kate's has the right to terminate the agreement after the first year, and each year thereafter, unless Kolo continues to pay Kate's a minimum of $140/Per Square Foot plus 6% Royalty.

4. Kolo will provide Kate's with monthly POS Data.

5. Kolo will pay Kate's monthly rental payments according to the financial prosposal enclosed.

6. Kolo will pay Kate's monthly royalty payments according to the financial proposal enclosed.

7. Kate's will provide Kolo with landlord's consent to the sub-lease and a non-disturbance.

KOLO

# Financial Proposal

1. Starting Rent Per Square Foot - $75.00

2. Starting Royalty - 6%

3. Royalty Increases – Royalties increase according to the following revenue schedule;
   Net Sales of $250,000 to $449,000 – 6%
   Net Sales of $450,000 to $649,000 – 10%
   Net Sales of $$650,00 and up – 11%

4. Rent Increases – Rent increases according to the following revenue schedule;
   Net Sales of $250,000 – $75/Sq.Ft.
   Net Sales of $350,000 – $79/Sq.Ft.
   Net Sales of $450,000 – $83/Sq.Ft.
   Net Sales of $550,000 – $90/Sq.Ft.
   Net Sales of $650,000 – $100/Sq.Ft.
   Net Sales of $750,000 – $135/Sq.Ft.

# Financial Forecast

## Escalations

| | $250,000 | $350,000 | $450,000 | $550,000 | $650,000 | $750,000 |
|---|---|---|---|---|---|---|
| Annual Retail Sales | | | | | | |
| Sales/sq. ft | $556 | $778 | $1,000 | $1,222 | $1,444 | $1,667 |
| Rent/Sq.Ft. | $75 | $79 | $83 | $90 | $100 | $135 |
| Royalty | 6% | 6% | 10% | 10% | 11% | 11% |

KOLO

# Comparison of Kate's profitability under the existing vs. new model

KOLO

| | $155,000 | $250,000 | $350,000 | $450,000 | $550,000 | $650,000 | $750,000 | % |
|---|---|---|---|---|---|---|---|---|
| Sales | $155,000 | $250,000 | $350,000 | $450,000 | $550,000 | $650,000 | $750,000 | |
| Net Sales | $150,350 | $242,500 | $339,500 | $436,500 | $533,500 | $630,500 | $727,500 | 97% |
| Gross Margin | $78,182 | $126,100 | $176,540 | $226,980 | $277,420 | $327,860 | $378,300 | 52% |
| **Operating Expenses** | | | | | | | | |
| Store Operating Expenses | $48,112 | $77,600 | $108,640 | $139,680 | $170,720 | $201,760 | $232,800 | 32% |
| Corporate Overhead | $16,539 | $26,675 | $37,345 | $48,015 | $58,685 | $69,355 | $80,025 | 11% |
| Total Operating Expenses | $64,651 | $104,275 | $145,985 | $187,695 | $229,405 | $271,115 | $312,825 | 43% |
| EBITDA | $13,532 | $21,825 | $30,555 | $39,285 | $48,015 | $56,745 | $65,475 | 9% |
| Depreciation & Amortization | $3,007 | $4,850 | $6,790 | $8,730 | $10,670 | $12,610 | $14,550 | 2% |
| EBIT | $10,525 | $16,975 | $23,765 | $30,555 | $37,345 | $44,135 | $50,925 | 7% |
| Other Income and Expenses | $4,511 | $7,275 | $10,185 | $13,095 | $16,005 | $18,915 | $21,825 | 3% |
| Net Income | $6,014 | $9,700 | $13,580 | $17,460 | $21,340 | $25,220 | $29,100 | 4% |
| Future Net Income | $(6,014) | $(14,187) | $(6,680) | $18,372 | $31,363 | $51,868 | $78,288 | |
| Difference | | $(23,887) | $(20,260) | $912 | $10,023 | $26,648 | $49,188 | |
| Future Net Income % | | | | 4% | 6% | 8% | 11% | |

Chart legend:
— Net Income under existing model
— Net Income under new model

Horizontal axis: Net Retail Sales — $242,500, $436,500, $533,500, $630,500, $727,500

Vertical axis: $(20,000), $-, $20,000, $40,000, $60,000, $80,000, $100,000

Data labels: $8,700, $13,580, $(6,600), $(14,187), $18,372, $17,460, $31,303, $21,340, $51,868, $26,220, $78,288, $29,100

# Comparative analysis of net income projections

| | | | | | | |
|---|---|---|---|---|---|---|
| Annual Retail Sales | $250,000 | $350,000 | $450,000 | $550,000 | $650,000 | $750,000 |
| Annual Net Retail Sales | $242,500 | $339,500 | $436,500 | $533,500 | $630,500 | $727,500 |
| Kates Total Revenues (Roy. & Rent) | $48,300 | $55,808 | $80,859 | $93,850 | $114,355 | $140,775 |
| Kates Operating Expenses | $62,487 | $62,487 | $62,487 | $62,487 | $62,487 | $62,487 |
| **Kates Net Operating Income** | -$14,187 | -$6,680 | $18,372 | $31,363 | $51,868 | $78,288 |
| Kolo Gross Profit | $126,382 | $176,935 | $210,028 | $256,701 | $297,069 | $342,771 |
| Kolo Operating Expenses | $151,703 | $167,455 | $183,292 | $200,648 | $219,213 | $249,028 |
| **Kolo Net Income** | -$33,654 | $1,146 | $18,402 | $47,719 | $69,522 | $85,410 |



Bar chart — Net Retail Sales (x-axis categories: $436,500 / $533,500 / $630,500 / $727,500); y-axis from -$40,000 to $100,000.

Legend:
- Kate's Net Income
- Kolo Net Income

Data labels shown:
- -$14,187 / -$33,654
- -$6,680 / $500 / $1,146 (-$6,680, $1,146)
- $18,372 / $18,402
- $31,363 / $47,719
- $51,868 / $69,522
- $78,288 / $85,410

KOLO